UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| DAHIR ROBLE, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | **(JURY TRIAL DEMANDED)** |
| AMERICAN AIRLINES, INC., | |
| and | |
| AMERICAN AIRLINES GROUP, INC. | |
| Defendants. | |

## PLAINTIFF'S COMPLAINT

Plaintiff, Dahir Roble, by and through his undersigned counsel, herein complains and demands damages, based on the causes of action set forth below:

**I**            **PARTIES AND VENUE**

1. Plaintiff, Dahir Roble, is an adult, currently living in the State of Minnesota. His address is 3845 Hiawatha Avenue, Apartment 329, Minneapolis, MN 55406. His telephone number is 507-202-8081.

1

2. Defendant, American Airlines, Inc. is a Delaware Corporation with its principal place of business located at 4333 Amon Carter Boulevard, Fort Worth, TX 76155.

3. Defendant, America Airlines Group, Inc. is the parent company of American Airlines, Inc. (collectively "American Airlines")

4. American Airlines Group, Inc.'s principal place of business is 4333 Amon Carter Boulevard, Fort Worth, TX 76155.

5. At all times relevant to this complaint, American Airlines regularly, systematically and as a matter of course conducted continuous and substantial business in the State of Minnesota to include Hennepin County, through its sale, marketing and provision of travel services.

6. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. 1391(b)(2), because a substantial part of the events or omissions regarding this claim occurred in the District of Minnesota.

II **FACTUAL BACKGROUND**

7. On October 7, 2017, Mr. Roble was a First Class passenger on American Airlines flight 1559.

8. Mr. Roble purchased a first class ticket because he sits permanently on an electric wheelchair and therefore did not want to suffer unnecessarily from being wheeled in

an out from the rear of the airplane if he happened to seat anywhere behind the first class passengers. Mr. Roble is a victim of several gunshot wounds that rendered him permanently disabled. The electric power chair gives postural support and therefore reduces pelvic and lower back area pressure. Specifically designed to have a lower rear edge which allows the user to sit slightly reclined, the chair is suitable for people like plaintiff with a high risk of developing pressure sores and pain when sitting straight.

9. At all times relevant hereto, Defendants acted and/or failed to act through their agents, employees, servants, successors, and/or workmen, and therefore, any negligent act and/or omission committed by the Defendants' agents, servants, employees, successors and/or workmen imposes liability on Defendants under the laws of vicarious liability, agency and/or *respondeat superior*.

10. As a First Class passenger, Mr. Roble was at all times relevant to this complaint a business invitee of Defendants and, therefore, Defendants owed him the highest duty under the law for his safety, health, comfort and wellbeing.

11. At all times relevant to this cause of action, Mr. Roble required the use of a wheelchair to board and disembark from the airplane.

12. Before boarding the plane, Mr. Roble had been using his electric wheelchair that was in perfect working condition.

13. In order to board the plane, American Airlines employees, agents and/or workmen transferred Mr. Roble to an American Airlines wheel or aisle chair.

14. Having transferred Mr. Roble from his electric wheelchair to an American Airlines wheel or aisle chair, an employee, agents and/or work person transported him to his first class seat.

15. Flight 1559 originated from Raleigh North Carolina and landed at O'Hare Airport in Chicago for Mr. Roble to board his last flight to Minneapolis-St Paul Airport, his final destination.

16. After flight 1559 had landed at Chicago's O'Hare Airport and Mr. Roble was transported on an Aisle chair immediately outside the plane, an agent, employee, contractor or workman of American Airlines informed him that his electric chair was inoperable.

17. Both Mr. Roble and agents, employees, contractors and workmen of American Airlines tried in vain to turn on Mr. Roble's electric wheelchair that was hitherto in perfect working condition in Raleigh, North Carolina.

18. Without his electric wheelchair to get to his connecting flight to Minneapolis, Minnesota, Mr. Roble lost freedom, independence and comfort that only an electric wheelchair can provide.

19. Agents, contractors, employees and/or workmen of American Airlines then informed Mr. Roble that his flight to Minneapolis was already boarding and he needed to be rushed to the gate for boarding.

20. Without his electric wheelchair, Mr. Roble informed agents, contractors, employees and/or workmen of American that he needed to go to the toilet and they told him they could not assist him.

21. The manual wheelchair provided to Mr. Roble was larger, and not easy to maneuver and pulling his urine bag while inside the toilet was cumbersome and difficult and resulting in his urine spilling all over his feet and hands as he attempted to empty the urine bag while maintaining balance.

22. A complete stranger observing Mr. Roble struggling helped pushed his manual wheelchair out of the toilet.

23. An employee, agent, contractor or workman of American Airlines informed Mr. Roble that because the airplane to Minneapolis was smaller and his electric wheelchair heavy, his wheelchair would not be allowed into the flight to Minneapolis. Mr. Roble told American Airlines agents, employees, contractor and workmen several times that he was in pain and needed his electric wheelchair.

24. Having arrived in Minneapolis and waited for his electric Wheelchair for close to an hour, Mr. Roble was informed by American Airlines employees, agents, contractors or workmen that his electric wheelchair was still in Chicago.

25. Mr. Roble's electric wheelchair, like a Lazy-Boy chair is comfortable when tilted and in his case, tilting eases pain and suffering associated with operating his wheelchair.

26. Sweating profusely and in pain and having spent over two hours after arrival waiting for his electric wheelchair and filing a baggage claim with American Airlines, Mr. Roble called friends to bring him a manual wheelchair from his apartment and extra clothing.

27. By the time Mr. Roble got to his home, he was extremely tired and in much pain. Sleeping was harder than usual and a day later, a medical doctor had to prescribe him

Oxycodone as a result of much pain brought about by the loss of his electric wheelchair.

28. It took American Airlines almost two weeks to return Mr. Roble's electric wheelchair to him in in its original working condition.

29. Before Mr. Roble's ordeal with American Airlines, Defendants knew or should have known that wheelchair passengers could suffer harm as a result of the negligence or recklessness of its employees, agents, contractors and/or workmen.

30. Defendants had a duty to hire, train and retain competent employees, contractors, agents and/or workmen who are responsible for the transport, transfer and/or supervision of wheelchair bound passenger and the proper handling of electric wheelchairs.

31. At all times relevant to this case, Defendants failed to properly hire, train and/or retain competent employees, agents and/or workmen.

32. At all times relevant hereto, Defendants American Airlines failed to provide adequate and suitable wheelchair transportation for loading and unloading disabled passengers from its aircraft.

33. As a direct, proximate, and substantial result of the negligent, careless and reckless operation of Mr. Roble's wheelchair and American wheelchairs and Aisle chairs, he suffered additional excruciating pain, loss of life's enjoyment, medical expense, embarrassment and humiliation and other emotional injuries.

**COUNT I - NEGLIGENCE**

**<u>PLAINTIFF DAHIR ROBLE V. ALL DEFENDANTS</u>**

34. The above paragraphs are incorporated herein by reference as if the same were fully set forth herein.

35. Defendants American Airlines individually and collectively owned, possessed, controlled, supervised, leased, maintained and were responsible for the aircraft and the wheelchairs and Aisle chairs involved in transporting Mr. Roble and for the malfunctioning of Mr. Roble's electric wheelchair and they had an obligation to ensure the safety of the wheelchairs as described herein.

36. American Airlines, negligently, carelessly, and recklessly breached the duties it owed Mr. Roble by:

   a. Failing to maintain the Plaintiff's electric wheelchair in a reasonably safe condition;

   b. Failing to coordinate Defendants' employees, agents, and workmen to ensure Mr. Roble's safe transportation on a manual wheelchair in transit in Chicago;

   c. Failing to respond to Plaintiff's multiple complaints of pain and suffering during his transit in Chicago due to the absence of Plaintiff's electric wheelchair;

   d. Failing to maintain a proper procedures for transporting wheelchair bound passengers on and off airplanes to their connecting flight;

   e. Failing to provide a proper manual wheelchair for wheelchair bound passengers in need of using the bathroom and abandoning Plaintiff to himself despite his pleas for help in using the bathroom before boarding his connecting flight;

   f. Failing to act reasonable under all the circumstances;

   g. Failing to hire, train, and retain competent employees, agents, and workmen regarding the proper handling of electric wheelchairs; and

   h. Violating applicable codes, regulations and standards.

37. As a direct, factual and proximate result of Defendant's negligence, carelessness, and recklessness, Mr. Roble suffered and continues to suffer from the injuries and damages described above and incorporated by reference herein.

WHEREFORE, Plaintiff demands damages against the Defendants, jointly and severally, in a sum in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), exclusive of interest and allowable costs of suit and brings this action to recover same. Plaintiff further demands punitive damages.

**THE PLAINTIFF CLAIMS TRIAL BY JURY**

Dated: January 12th, 2018

**ALBERT USUMANU LAW OFFICE**

*/s/ Albert Usumanu*

**Albert Usumanu**
P.O. Box 6866
Minneapolis, MN 55406
Telephone (612) 236-4748
Fax (612) 353-6482
Email: njoyaus@ausumlawfirm.com

**ATTORNEYS FOR PLAINTIFF**